IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

JAMES MATTHEW LEWIS                    *

      Plaintiff,                 *
vs.
                              *      CASE NO. 3:06-CV-29(CDL)
THOMAS R. WILCOX, individually,
and in his official capacity as        *
a Deputy for Walton County;
WALTON COUNTY, Georgia;                 *
JERRY GREG HALL, individually,
and in his official capacity as        *
a Deputy for Walton County; and
JOE CHAPMAN, individually, and         *
in his official capacity as
Sheriff for Walton County,             *

      Defendants.                *
_____

O R D E R

Presently before the Court is Defendants' Motion for Summary Judgment (Doc. 67). For the reasons set forth below, this motion is granted as to all of Plaintiff's federal claims.

FACTUAL BACKGROUND

On August 21, 2005, at approximately 11:00 p.m., Plaintiff was traveling with a group of motorcyclists on Georgia Highway 81. The group passed the entrance to a subdivision where two Walton County Sheriff's Deputies, Defendants Hall and Wilcox, were parked. Both Hall and Wilcox testified that they believed the motorcycles were traveling at a high rate of speed, although neither deputy was able to state with certainty exactly how fast they believed the motorcycles were traveling. (Hall Dep. 19:4-6; Wilcox Dep. 8:8-11.)

Both deputies reentered their patrol cars, activated their blue lights, and attempted to direct the entire group to the side of the road. Hall testified that his "whole intention was to give them a warning to slow them down" because while he was sure that the group was speeding, he knew he would not be able to specify the group's exact rate of speed. (Hall Dep. 22:21-25.) Wilcox testified that he was attempting to assist Hall with the traffic stop. (Wilcox Dep. 19:2-3.)

Several of the cyclists stopped immediately, and the remainder of the group stopped a short distance later. Hall drove his vehicle to the front of the group, stepped out of his vehicle, and turned to the group. Wilcox, who was behind the entire group, used his PA system to instruct the cyclists who had immediately stopped to catch up with the remainder of the group in order to facilitate the investigation. In the meantime, two of the motorcyclists, Plaintiff and Adam Crowe, turned around and drove away from Hall and towards Wilcox. Hall radioed Wilcox to inform him that Plaintiff and Crowe were heading in his direction.[1]

Defendant Wilcox moved his patrol car from behind the group of three motorcycles and straddled the lane divider. Plaintiff and Crowe continued driving towards Wilcox, in the left lane, at an estimated 30 to 35 miles per hour. Apparently believing that Wilcox

---

[1]Wilcox testified that he never actively pursued Plaintiff and Crowe. (Wilcox Dep. 32:15.)

was "trying to play chicken" with him (Lewis Dep. 45:1), Plaintiff slammed on his brakes and lost control of his motorcycle. Plaintiff was somewhere between seventeen and sixty yards from Wilcox's vehicle when Crowe collided with Plaintiff, causing serious injuries to Plaintiff.

Plaintiff first filed the present action in the Superior Court of Walton County, Georgia. On April 12, 2006, Defendants removed the case to this Court pursuant to 28 U.S.C. §§ 1441 *et seq.* and the jurisdiction conferred by 28 U.S.C. § 1331. (Notice of Removal ¶¶ 3, 5.)[2] Plaintiff brings claims against all Defendants under 42 U.S.C. §§ 1983 and 1985 and various state laws. (Compl. ¶¶ 9, 32-34, 9-16, 26.) Specifically, Plaintiff alleges that Defendant Wilcox's actions violated Plaintiff's Fourth Amendment right to be free from unreasonable seizures and his Fifth and Fourteenth Amendment rights to due process. Plaintiff also asserts that under Georgia law, Defendant Wilcox is liable for negligence, false imprisonment, aggravated assault, reckless driving, reckless conduct, driving on the wrong side of the road, serious injury by vehicle, failure to maintain lane, and failure to operate emergency equipment. Plaintiff alleges that Defendant Hall is liable for violating Plaintiff's Fourth, Fifth, and Fourteenth Amendment rights and also asserts state law negligence claims. Plaintiff contends that Defendants Chapman

---

[2]Title 28 U.S.C. § 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

and Walton County authorized deprivations of Plaintiff's constitutional rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments, negligently hired, trained, and supervised deputies, and ratified the conduct of Defendants Hall and Wilcox. Defendant Chapman is also named in his individual capacity as the supervisor of Defendants Hall and Wilcox.

For the following reasons, the Court finds that the doctrines of qualified and Eleventh Amendment immunity bar Plaintiff's claims against Defendants Hall, Wilcox, and Chapman. The Court also finds that Plaintiff has failed to present evidence sufficient to create a genuine issue of material fact regarding his claims against Walton County and Chapman, in his individual capacity as the supervisor of Hall and Wilcox. Therefore, as to all federal claims, Defendants' motion must be granted.

DISCUSSION

## I.   SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of showing that there is no genuine issue of material fact, and may do so by pointing to an absence of evidence to support an essential element of the nonmoving party's case. *See Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 323, 325 (1986). Once the moving party has met its burden, the burden shifts to the nonmoving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. The reviewing court should grant summary judgment only if the combined body of evidence, viewed in the light most favorable to the nonmoving party, would not permit a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

While the facts must be viewed in the light most favorable to the Plaintiff, the record in this case contains a DVD recording of the incident. (*See* Ex. A, Mem. of Law in Supp. Def.['s] Mot. for Summ. J.) When such a recording clearly contradicts assertions made by the parties, a court may not rely on any facts "blatantly contradicted by the record, so that no reasonable jury could believe it," and shall rely instead upon the representations in the recording. *Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007). After reviewing the recording in this case, the Court is assured that the recording is consistent with the facts alleged in the parties' pleadings.

## II.   SUITS AGAINST DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES

A.   Defendants Hall and Wilcox: Qualified Immunity

Plaintiff asserts that Defendants Hall and Wilcox violated his federally protected rights and are liable under 42 U.S.C. § 1983. Under this provision,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .[3]

---

[3]Plaintiff's Complaint alleges violations of his Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights; however, only the Fourth Amendment claim was fully addressed in Plaintiff's Response to Defendants' Motion for Summary Judgment. The Court is not convinced that Plaintiff "abandoned" the remaining claims, as Defendant contends, and will address them accordingly.

Plaintiff also mentions 42 U.S.C. § 1985 as a possible basis for suit, albeit apparently only against Defendants Walton County and Chapman. Only § 1985(3) seems remotely applicable to the facts of this case. In order to state a claim under § 1985(3), Plaintiff must show evidence of:

> (1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy, (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Childree v. UAP/GA AG CHEM, Inc.*, 92 F.3d 1140, 1146-47 (11th Cir. 1996). "The second element requires a showing of some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Id.* at 1147 (internal citations and quotation marks omitted). The Eleventh Circuit has repeatedly limited application of § 1985(3) to racial contexts. *See id.*

Plaintiff produces no evidence or argument that any Defendant conspired to deprive him of equal protection of the laws. Moreover, Plaintiff has not shown that Defendants' actions were motivated by race or class-based animus. Because Plaintiff has failed to present evidence sufficient to create a genuine issue of material fact as to at least two elements of his § 1985 claims, Defendants are entitled to summary judgment on those claims.

Among other defenses, Defendants raise qualified immunity.

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The defendant has the burden of proving that he or she was performing a discretionary function; once proven, the burden then shifts to the plaintiff to show that qualified immunity is not appropriate.[4]  *Id.*  To determine whether qualified immunity is appropriate, the Court must first decide whether "the facts alleged show the officer's conduct violated a constitutional right" and must then decide "whether the right was clearly established . . . in light of the specific context of the case." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

In this case, Plaintiff has not presented evidence to make the threshold showing that the conduct of Defendants Hall and Wilcox violated a constitutional right.  Accordingly, the Court finds these

---

[4]Plaintiff argues that Defendant Wilcox was performing a ministerial function when "he violated clearly established rules and regulations" by maneuvering his patrol vehicle into the left lane.  (Pl.'s Resp. 15.) However, this Court finds that Defendants Hall and Wilcox each performed a discretionary function of his employment as a deputy sheriff when he attempted to effectuate the traffic stop. *See, e.g., Wood v. Kesler*, 323 F.3d 872, 877 (11th Cir. 2003) (finding it "clear" that trooper was acting in the scope of his discretionary authority when he stopped driver for alleged traffic violation).

Defendants, in their individual capacities, entitled to qualified immunity to the extent that Plaintiff bases his claims on § 1983.

### 1.   Fifth Amendment Violation

First, Plaintiff failed to properly allege a violation of his Fifth Amendment rights.  The Fifth Amendment is a direct limitation on federal power, and no named Defendant in this case is a federal entity.  The proper basis for alleging a Fifth Amendment violation against a state official is the Fourteenth Amendment, which incorporates Fifth Amendment protections.  *See, e.g., Kelo v. City of New London*, 545 U.S. 469, 508 n.1 (2005) (Thomas, J., dissenting) (recognizing incorporation of the Takings Clause); *Malloy v. Hogan*, 378 U.S. 1, 6-11 (1964) (incorporating protection against self-incrimination).  Because Plaintiff has not properly alleged a violation of his Fifth Amendment rights, Defendants Hall and Wilcox are entitled to qualified immunity to the extent Plaintiff relies on the Fifth Amendment to support his § 1983 claims.

### 2.   Eighth Amendment Violation

Similarly, Plaintiff failed to properly allege a deprivation of his Eighth Amendment rights.  The Supreme Court has held the Eighth Amendment to apply only "'after [the State] has secured a formal adjudication of guilt in accordance with due process of law.'"  *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) (quoting *Ingraham v. Wright*, 430 U.S. 651, 671-72 n.40 (1977)).  The events which give rise to Plaintiff's claims clearly did not occur after any

formal adjudication of guilt.  Thus, to the extent Plaintiff's § 1983 claims depend on a violation of the Eighth Amendment, Defendants Hall and Wilcox are entitled to qualified immunity.

### 3. Equal Protection Violation

Plaintiff also alleges an equal protection claim arising under the Sixth and Fourteenth Amendments.  The United States Supreme Court acknowledges that a "class of one" may bring a successful equal protection claim when "the plaintiff alleges that []he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  However, the circuits are split on how broadly *Olech* should be read.  Some circuits require a showing "'that the defendant deliberately sought to deprive [the plaintiff] of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant's position.'"  *Purze v. Village of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002) (alteration added) (quoting *Hilton v. City of Wheeling*, 209 F.3d 1005, 1008 (7th Cir. 2000)).  Plaintiffs in other circuits have the option of demonstrating animus or simply "'negativ[ing] every conceivable basis which might support'" the disputed governmental action.  *Warren v. City of Athens, Ohio*, 411 F.3d 697, 711 (6th Cir. 2005) (quoting *Klimik v. Kent County Sheriff's Dep't*, 91 F. App'x 396, 400 (6th Cir. 2004)).

The Eleventh Circuit has yet to decide which approach to take. *See Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1314 n.6 (11th Cir. 2006). However, because Plaintiff failed to identify even the existence of a similarly-situated individual who the Defendants treated differently, Plaintiff has not made the requisite showing under either approach. *See, e.g.*, *id.* at 1314. Consequently, Defendants Hall and Wilcox are entitled to qualified immunity to the extent Plaintiff's claims depend on an alleged Sixth or Fourteenth Amendment equal protection violation.

### 4. Fourth Amendment Violations

Plaintiff next argues that Defendants' actions violated the Fourth Amendment. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. Although Plaintiff's allegations appear to raise two distinct Fourth Amendment claims, neither is an adequate basis for imposing § 1983 liability because Plaintiff cannot show that he was "seized" for purposes of the Fourth Amendment.

Plaintiff first contends that Defendants violated the Fourth Amendment when they unreasonably seized Plaintiff without probable cause. In addition, Plaintiff alleges that Defendant Wilcox's use of his vehicle as a "rolling roadblock" constituted an unreasonable use of excessive force in violation of the Fourth Amendment. Resolution of both claims turns on whether Defendants' actions constituted a

seizure.  If Plaintiff was "seized" for purposes of the Fourth Amendment, his claim would be properly analyzed under that constitutional provision.  *See City of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) (reasoning that Fourteenth Amendment due process should not be implicated if a § 1983 claim could be "covered by a specific constitutional provision" (internal citation and quotation marks omitted)).  If no intentional seizure exists, there can be no violation of Plaintiff's Fourth Amendment rights.  *See Evans v. Hightower*, 117 F.3d 1318, 1321 (11th Cir. 1997) (holding no actionable Fourth Amendment claim existed when officers accidentally struck plaintiff with patrol vehicle because plaintiff produced no evidence that officers' actions were intended to seize the plaintiff).[5]

    a.   Lack of Suspicion for Initial Traffic Stop

Plaintiff claims that Defendant Hall had no knowledge that Plaintiff and Crowe were speeding or eluding police; consequently, Plaintiff argues that Defendant Hall had no suspicion sufficient to justify the traffic stop.  This argument fails because the traffic stop never rose to the level of a constitutionally-protected Fourth Amendment seizure.  The Supreme Court makes clear that a Fourth Amendment seizure "requires *either* physical force . . . *or*, where

_____

[5]If Defendants' actions did not constitute a Fourth Amendment seizure, Plaintiff's sole remaining constitutional claim would fall under the Fourteenth Amendment and, as discussed *infra* in section II.A.5, is not viable.

11

that is absent, *submission* to the assertion of authority." *California v. Hodari D.*, 499 U.S. 621, 626 (1991) (emphases in original). Neither force nor submission is present in this case.

Plaintiff testified that he did not stop when he saw Hall's flashing lights, but instead turned in the opposite direction and drove, at the posted speed limit, towards Defendant Wilcox. (Lewis Dep. 37-39; 43-44.) Moreover, the evidence establishes that neither Defendant Hall nor Defendant Wilcox ever exerted physical force upon Plaintiff. Hall never made contact with Plaintiff, and Wilcox's vehicle was at least seventeen yards from Plaintiff when Plaintiff lost control of his motorcycle. (Lewis Dep. 62:14-15; Lewis Aff.) Because Plaintiff's own testimony establishes the absence of both force and submission, the traffic stop never rose to the level of a constitutionally-protected seizure. Thus, the question of whether sufficient reasonable suspicion or probable cause existed at any point prior to the accident is irrelevant.[6]

---

[6]Plaintiff appears to argue that he "submitted" to a show of police authority at two points in time: first, during the initial traffic stop and second, when his motorcycle crashed. Whether Plaintiff's accident constituted a "submission" to a show of authority is discussed *infra*, section II.A.4.b.

The argument that Plaintiff submitted to the initial traffic stop is foreclosed by Plaintiff's own testimony, as discussed in section II.A.4.a. However, even assuming a jury could find that Plaintiff submitted to Defendants' show of authority, Plaintiff's Fourth Amendment claim would still fail as a matter of law because the initial traffic stop was justified by reasonable suspicion of speeding. Reasonable suspicion is based upon the totality of the circumstances in light of any special training or experience a law enforcement officer has. *See, e.g., United States v. Brignoni-Ponce*, 422 U.S. 873, 884-86 (1975). Reasonable suspicion can also be based on the collective knowledge of all officers involved in a particular stop. *See, e.g., United States v. Nunez*, 455

b.   Roadblock as Excessive Force

Plaintiff's second argument is that Defendant Wilcox's use of his vehicle as a "rolling roadblock" was an unreasonable use of deadly force in violation of the Fourth Amendment.   In order for there to be a seizure implicating the Fourth Amendment, there must be "a governmental termination of freedom of movement *through means intentionally applied*."   *Brower v. County of Inyo*, 489 U.S. 593, 597 (1989) (emphasis in original).   In *Brower*, police attempted to capture a fleeing suspect.   The police established a dangerous roadblock by blocking both lanes of traffic with an eighteen-wheeler, placing the roadblock behind a curve, and positioning a police car so that it would be even more difficult for Brower to see the roadblock

---

F.3d 1223, 1226 (11th Cir. 2006).   Moreover, whether reasonable suspicion existed at the time of an investigatory stop is an objective inquiry and is not based on the actual suspicion of the officer effectuating the stop. *See id.*

Defendants Hall and Wilcox are experienced patrol officers.   Each testified that he believed the group of motorcycles was traveling "at a high rate of speed."   (Hall Dep. 19:4; Wilcox Dep. 8:8-9.)   However, Defendant Hall, who initiated the stop, also testified that he was specially trained in estimation of speed.   In order to qualify to operate a radar gun, deputies must be able to approximate speed of moving objects with a certain degree of accuracy.   (Hall Dep. 23:12-25.)   Although Hall could not specifically identify Plaintiff and Crowe as part of the speeding group, Hall observed two motorcycles break away from the large group, turn around, and head towards Wilcox.   Hall then radioed Wilcox to let him know that two members of the group had turned and were driving towards him.   Wilcox testified that his intention was to aid Hall in the traffic stop by gathering the motorcycles so that Hall could safely deal with the group as a whole.   (Wilcox Dep. 20:24-25; 21:1-3.)

This Court concludes, based on the totality of the circumstances, that: (1) a reasonable officer with Defendant Hall's training and experience would have suspicion sufficient to justify stopping the group of motorcycles for speeding and (2) Hall's reasonable suspicion was imputed to Wilcox.   In light of this decision, it is unnecessary for the Court to consider whether reasonable suspicion or probable cause existed to justify a stop for fleeing or eluding.

before striking it. Brower was killed when he struck the roadblock, and his heirs sued under § 1983, claiming that Brower was unconstitutionally seized because use of the deadly roadblock constituted excessive force. *Id.* at 594.

The Supreme Court ruled that such a roadblock is not only "a significant show of authority to induce a voluntary stop, but is designed to produce a stop by physical impact if voluntary compliance does not occur." *Id.* at 598. The Court also declined "to distinguish between a roadblock that is designed to give the oncoming driver the option of a voluntary stop (*e.g.*, one at the end of a long straightaway), and a roadblock that is designed precisely to produce a collision . . . ." *Id.* Still, the Court made clear that there would be no Fourth Amendment seizure when a pursuing police car attempted to stop a suspect "only by the show of authority represented by flashing lights and continuing pursuit," but the suspect "was stopped by a different means—his loss of control of his vehicle and the subsequent crash." *Id.* at 597. The Court reasoned that even when "there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement," no Fourth Amendment seizure exists unless the person is actually stopped by the very instrumentality designed to achieve that stop. *Id.* at 596-97, 599 (emphasis in original). Even after *Brower*, the Court has insisted that a mere attempt to make a seizure does not implicate the

Fourth Amendment. *See, e.g., City of Sacramento*, 523 U.S. at 844 n.7 (citing *California v. Hodari D.*, 499 U.S. 621, 626 n.2 (1991)).

In contrast to *Brower*, Defendants in this case, at most, merely attempted a seizure. Even if Defendant Wilcox intentionally created a "rolling roadblock" by maneuvering his vehicle into Plaintiff's lane, Defendant's vehicle did not actually cause the accident. Plaintiff concedes that he and Defendant Wilcox were at least seventeen yards apart when Plaintiff lost control of his motorcycle. (Pl.'s Resp. 8.; Lewis Aff.) Although it seems likely that any "roadblock" implemented by Defendant Wilcox had the desired effect of stopping Plaintiff, it was Plaintiff's loss of control of his vehicle that ultimately caused the cessation of his movement. Even if Defendant Wilcox's conduct constituted negligence, it did not amount to a seizure.[7] Defendants' actions fall outside the purview of *Brower*, and accordingly, Plaintiff failed to demonstrate that he was

---

[7] In circumstances similar to those in the case at bar, the Eleventh Circuit makes clear that mere negligence cannot ground § 1983 liability. In *Rooney v. Watson*, the Eleventh Circuit upheld the district court's grant of summary judgment in favor of a deputy and a county. 101 F.3d 1378, 1382 (11th Cir. 1996). The plaintiffs in that case alleged they suffered constitutional deprivations of their due process rights when their vehicle was struck by a deputy's patrol car; the deputy was speeding —although not responding to an emergency call or engaging in pursuit—at the time of the accident. *Id.* at 1379. The Eleventh Circuit determined "'that a person injured in an automobile accident caused by the negligent, or even grossly negligent, operation of a motor vehicle by a policeman acting in the line of duty has no section 1983 cause of action for violation of a federal right.'" *Id.* at 1381 (quoting *Cannon v. Taylor*, 782 F.2d 947, 950 (11th Cir. 1986)). Of course, this Court's finding that Plaintiff suffered no actionable constitutional injury does not preclude Plaintiff from asserting his negligence claims in the state court system. *See id.* at 1381 n.1.

seized in violation of the Fourth Amendment. Defendants Hall and Wilcox are therefore entitled to qualified immunity to the extent Plaintiff's claims are based on a violation of the Fourth Amendment.

5. Fourteenth Amendment Due Process Violation

Finally, Plaintiff failed to demonstrate a deprivation of his Fourteenth Amendment due process rights. A Fourteenth Amendment claim may be properly raised only when no other amendment more specifically addresses the alleged deprivation. *See Graham v. Connor*, 490 U.S. 386, 395 (1989) (noting that Fourth Amendment reasonableness analysis, rather than Fourteenth Amendment scrutiny, is appropriate in seizure claims involving excessive force). However, in circumstances involving police pursuit and apprehension, the Fourteenth Amendment may sustain a substantive due process challenge if the Plaintiff cannot demonstrate a Fourth Amendment violation. *See, e.g., City of Sacramento*, 523 U.S. at 843-44 (clarifying that a police chase that ends in an *accidental* termination of the suspect's freedom would be appropriately raised as a substantive due process claim).

"[P]olice officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving." *Graham*, 490 U.S. at 397. Therefore, the Supreme Court imposes a heavy burden on a plaintiff attempting to show a due process violation under those circumstances. In *City of Sacramento*, the Court required a showing of "intent to harm suspects physically

or to worsen their legal plight" in order to give rise to a substantive due process claim under § 1983. *Id.* at 854.

Since effectuating a traffic stop of a large group of motorcyclists requires the same sort of police judgment as the decision to engage in pursuit, the standard articulated in *City of Sacramento* applies to these facts. Plaintiff acknowledged that he had no contact with Defendant Hall on the night of the accident. In fact, Plaintiff testified: "I don't even know what he looks like." (Lewis Dep. 62:23-24.) Defendant Wilcox testified that he was helping Hall with the traffic stop and that he moved into the other lane only "[t]o become visible behind the other motorcycles as they started out, just to show my presence." (Wilcox Dep. 13:20-21.) Plaintiff produces no evidence that Hall or Wilcox intentionally caused injury or wished to worsen Plaintiff's legal plight. Therefore, Defendants Hall and Wilcox are entitled to qualified immunity to the extent that Plaintiff's § 1983 claims depend on an alleged Fourteenth Amendment due process violation.

B.   Defendant Chapman: Supervisory Liability

Defendant Chapman is entitled to summary judgment insofar as Plaintiff alleges that he is individually liable as the supervisor of Defendants Hall and Wilcox. Plaintiff does not contend that Defendant Chapman was personally involved in the motorcycle accident. In the absence of such personal involvement, a defendant may be liable under § 1983 only if "'there is a causal connection between

actions of the supervising official and the alleged constitutional deprivation.'" *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (quoting *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990)). This causal connection exists when (1) "a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so" or (2) when the "supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" *Id.* (alterations in original) (quoting *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991)).

As previously discussed, Plaintiff has not presented evidence that could lead a reasonable trier of fact to conclude that Defendants deprived him of a constitutional right. Thus, any evidence indicating a history of abuse or improper policy is irrelevant to Plaintiff's § 1983 claim. *See Rooney*, 101 F.3d at 1381 ("[A]n inquiry into a governmental entity's custom or policy is relevant only when a constitutional deprivation has occurred."). Because Plaintiff failed to demonstrate deprivation of a constitutional right, Defendant Chapman is entitled to summary judgment on Plaintiff's § 1983 claims for supervisory liability.

III. ELEVENTH AMENDMENT IMMUNITY: OFFICIAL CAPACITY SUITS

Plaintiff also sues Defendants Chapman, Hall, and Wilcox in their official capacities, and Defendants assert that the doctrine of governmental immunity bars these claims. For the following reasons,

the Court finds Defendants Chapman, Hall, and Wilcox, in their official capacities, are entitled to Eleventh Amendment immunity.[8]

The Eleventh Amendment "bars suits brought in federal court when the State itself is sued and when an 'arm of the State' is sued." *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)). Eleventh Amendment immunity may be asserted not only by state officers and state officials, but by all persons "acting as an 'arm of the State,' which includes agents and instrumentalities of the State." *Id.* (citing *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429-30 (1997)).

The Eleventh Circuit, in *Manders v. Lee*, prescribed a four-factor test to determine whether an elected county official should be considered an "arm of the State" for immunity purposes: "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." 338

---

[8]It is true that in cases prior to *Manders v. Lee*, the Eleventh Circuit "merely accepted official capacity suits against Georgia sheriffs as suits against the respective counties." 338 F.3d 1324, 1328 n.52 (11th Cir. 2003). However, the decision in *Manders* explicitly overruled those "decisions [that] state or imply that Georgia sheriffs act for counties regarding the particular functions in issue-force policy and training and disciplining of deputies in that regard." *Id.* In light of the Court's decision that this case is legally indistinguishable from *Manders*, the Court does not have to reach the issue of whether the sheriff's office is an entirely separate entity, an arm of the State, or an arm of the county with respect to any other functions of a Georgia sheriff. *See Powell v. Barrett*, No. 05-16734, 2007 WL 2386610, at *24 n.19 (11th Cir. Aug. 23, 2007).

F.3d at 1309 (internal citations omitted).  While the issue of whether an entity is an arm of the State is a question of federal law, a court must first examine state law to define the relationship between the entity being sued and the State itself.  See id.

In this case, Plaintiff contends that Defendant Chapman implemented policies encouraging his deputies to effectuate arrests without the proper level of suspicion and with excessive force, in contravention of the Fourth Amendment.  However, an analysis of the *Manders* factors and relevant case law leads the Court to conclude that Defendant Chapman is an "arm of the State" and therefore entitled to governmental immunity.

A.    The *Manders* Factors

1.    How State Law Defines the Entity

First, the Court must examine how Georgia law defines the sheriff's office and its authority.  *See Manders*, 338 F.3d at 1319. Georgia state law clearly defines the sheriff's office as a wholly separate entity with "specific duties in three main areas: (a) law enforcement; (b) state courts; and (c) corrections."  *Id.* at 1312. A chief duty of a county sheriff is "perform[ing] state functions for the sovereign in enforcing the laws and keeping the peace."  *Id.* at 1313.  This language from the Eleventh Circuit "strongly suggest[s] that in performing law enforcement functions, such as arresting citizens for violations of the law, Georgia sheriffs [are] similarly 'arms of the State.'"  *Williams v. Keenan*, No. 5:06-CV-290 (CAR),

2007 WL 81823 (M.D. Ga. Jan. 8, 2007), at *3 (citing *Manders*, 338 F.3d at 1313). Thus, the first factor weighs in favor of immunity.

### 2. Where State Law Vests Control

The second factor requires an analysis of how Georgia law vests control over the sheriff's office. *See Manders*, 338 F.3d at 1320. The Eleventh Circuit has noted that: (1) Georgia requires and funds annual training of sheriffs, likely to include "force policy and hiring and training deputies;" (2) "the Governor has broad investigation and suspension powers regarding any misconduct by a sheriff in the performance of any of his duties," meaning there exists "immediate state control over the sheriff's acts"; and (3) counties have no control over a sheriff's force policy at the jail. *Id.* at 1320-22. Because Georgia law exerts substantial, direct control over the sheriff's office, the second factor also weighs heavily toward immunity. *See id.* at 1322.

### 3. Funds

The third factor requires examination of the sources of funding for the sheriff's office. *See Manders*, 338 F.3d at 1323. While the county "bears the major burden" of funding the office, "it is because the State so mandates." *Id.* Moreover, funding for training and discipline of the sheriff's office comes directly from the State. *Id.* Therefore, while perhaps more tenuously than the first two factors, the third factor weighs towards immunity because "state

funds are involved to some extent in the particular functions" at issue in this case. *Id.* at 1324.

### 4. Liability for and Payment of Adverse Judgments

The fourth factor requires analysis of whether the State would be liable for payment of an adverse judgment against a county sheriff. *See Manders*, 338 F.3d at 1324. While the Eleventh Circuit makes clear that the county itself would not be liable for such a judgment, the *Manders* court could find no Georgia authority requiring the State to pay that amount. *Id.* at 1326. Thus, "apparently [the sheriff] would have to pay any adverse federal court judgment against him in his official capacity out of the budget of the sheriff's office." *Id.* at 1327. Accordingly, "[i]f a significant adverse judgment occurs, both county and state funds are implicated because [the sheriff] would need to seek a greater total budget from the county for his office and a greater daily rate from the State for felony offenders serving their state sentences in the county jail." *Id.* Because both state and county budgets would be affected, "at a minimum, the liability-for-adverse-judgment factor does not defeat" an immunity claim. *Id.* at 1328.

### B. Relevant Case Law

The court in *Manders* held that a sheriff acted as an arm of the State regarding implementation of use-of-force policy at the county jail, but the court was careful to limit its holding to that particular function of the sheriff. *See Manders*, 338 F.3d at 1328.

22

Subsequent courts' decisions have declined to extend *Manders* to every function of a county sheriff. *See, e.g., Abusaid v. Hillsborough County Bd. of County Comm'rs*, 405 F.3d 1298, 1304 (11th Cir. 2005) (holding that a Florida sheriff did not act as an arm of the State when enforcing a county ordinance).

The only legally significant difference between *Manders* and the present case is that here, Plaintiff challenges Defendant Chapman's policies in the context of law enforcement rather than in the context of corrections. Law enforcement, like corrections, is an area over which Georgia sheriffs exercise complete and independent control. *See Manders*, 338 F.3d at 1312. Consequently, the factors as applied in *Manders* inform the Court's decision in this case.

In addition, this Court previously held that "[b]ased on the analysis found in *Manders*, where a sheriff is performing his official and authorized duties as a state actor, he is entitled to Eleventh Amendment immunity from a § 1983 claim for money damages or other retrospective relief brought against him in his official capacity." *Gates v. Jolley*, No. 4:06-CV-50 (CDL), 2007 WL 106533 (M.D. Ga. Jan. 8, 2007), at *3 (citing *Purcell v. Toombs County*, 400 F.3d 1313, 1325 (11th Cir. 2005)) (holding that the defendant deputy acted as an arm of the state when he "caused or effected" an arrest for a violation of state law). *Manders* has also been applied to bar a Fourth Amendment claim for excessive use of force. *See Scott v. Mercier*, No. CV506-33, 2007 WL 2728440 (S.D. Ga. Sept. 14, 2007), at

\*3-4 (holding that deputy was an arm of the State while using force in an attempt to resolve civil custody dispute under state law).

In light of the foregoing analysis, this Court finds that Defendant Chapman was acting as an "arm of the State" when promulgating use-of-force and seizure policies in the context of ordinary law enforcement. States, and arms of States, are not "persons" who can be sued under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Accordingly, the doctrine of governmental immunity bars Plaintiff's claims against Defendant Chapman in his official capacity.

Moreover, while it appears that the Eleventh Circuit has not confirmed that deputy sheriffs in Georgia are immune from suit under Eleventh Amendment principles, a line of district court cases has "determined that when a sheriff is acting as an arm of the state, his deputies are also entitled to Eleventh Amendment Immunity." *Gates v. Jolley*, No. 4:06-CV-50, 2007 WL 106533 (M.D. Ga. Jan. 8, 2007) (citing *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1527 (11th Cir. 1990); *Slater v. Henderson*, No. Civ. A. 5:03-CV-241, 2006 WL 1517068 (M.D. Ga. May 24, 2006); *Bunyon v. Burke County*, 306 F. Supp. 2d 1240, 1255 (S.D. Ga. 2004); *Mladek v. Day*, 293 F. Supp. 2d 1297, 1304 (M.D. Ga. 2003)). Therefore, the claims against Defendants Hall and Wilcox in their official capacities are also barred by Eleventh Amendment immunity.

IV.  CLAIMS AGAINST WALTON COUNTY

Plaintiff also avers that Defendant Walton County violated 42 U.S.C. § 1983 by maintaining negligent practices in hiring, training, supervision, and retention of sheriff's deputies and by authorizing and ratifying deprivations of constitutional rights.  Although local government entities are considered "persons" for purposes of § 1983 claims, a municipality may only be liable to the extent that "the municipality *itself* causes the constitutional violation at issue." *Canton v. Harris*, 489 U.S. 378, 385 (1989) (emphasis in original) (citing *Monell v. New York City Dep't of Social Svcs.*, 436 U.S. 658, 694-95 (1978)).  To prevail under this theory, a plaintiff must demonstrate that a policy or custom of the governmental entity caused the plaintiff to suffer a constitutional deprivation.  *See id.*

In this case, as previously discussed, Plaintiff cannot demonstrate that he suffered an actionable constitutional injury. Without such evidence, the policy or custom of the county is irrelevant, and no "genuine issue of material fact" exists to present to a jury.  *See Celotex*, 477 U.S. at 324; *see also City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point." (emphasis in original)).  Thus, Defendant Walton County is entitled to summary judgment as to Plaintiff's federal claims.

CONCLUSION

For the reasons stated above, the Court finds:

(1) The federal claims against Defendants Hall and Wilcox, in their individual capacities, are barred by qualified immunity;

(2) The federal claims against Defendants Chapman, Hall, and Wilcox in their official capacities, are barred by Eleventh Amendment immunity;

(3) Summary judgment is appropriate as a matter of law on Plaintiff's federal claim against Defendant Chapman, in his individual capacity as a supervisor, because Plaintiff has failed to produce evidence of a constitutional deprivation; and

(4) Summary judgment is appropriate as a matter of law on Plaintiff's federal claims against Defendant Walton County because Plaintiff failed to produce evidence of a constitutional deprivation.

Accordingly, Defendant's Motion for Summary Judgment (Doc. 67) is granted as to each Defendant on all § 1983 and § 1985 claims. Because this Order thus disposes of all federal issues related to this case, the Court declines to exercise jurisdiction over Plaintiff's state law claims and dismisses those claims without prejudice.

IT IS SO ORDERED, this 22nd day of October, 2007.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE